Good morning. May it please the court, my name is Katarina Rost. I'm here on behalf of Mr. Rohit, whose case was previously remanded by this court for the sole and narrow purpose of the Board of Immigration Appeals to address the issue of whether 647B conviction arises to a crime of moral turpitude. The board did, in fact, rule that they felt that it is a crime of moral turpitude. For purposes of their analysis, they, again, as the court had previously discussed with my prior colleagues, the case of Lambert. And it also relied on several state court decisions. I'm sorry, I'd like to reserve two minutes for rebuttal. I forgot to mention that. Just keep track of your time, OK? OK, thank you. Lambert is more in line with Gonzalez-Zaquipan and Capilina versus Gonzalez, Your Honors. It goes to the issue of procurement of prostitution. Let me ask you the same question that I asked to your colleague in the case before. Here you have another situation where the board analogizes. Yes. Is it your position that Chevron deference cannot be granted to the board's construction of a statute over which it has some control or some or cases to which it makes reference are not directly on point? I don't believe Chevron deference is opposite in this case, Your Honor. I think the BIA is only entitled to Skidmore deference in this case. OK. And do you have any case law that would substantiate your position? Well, I believe that that was the decision made in Skidmore, Your Honor. I know that that's Well, Skidmore dealt with unpublished opinions. Here we're talking about, at least in most cases, published opinions, but they're not necessarily directly on point. So I'm asking you whether you know of any cases from a federal Article III court that say that you cannot give Skidmore, or rather Chevron deference, in a situation like this where there is an analogy to published cases, but not a case directly on point. Well, I believe, Your Honor, that I do not know the name of a particular case, but I do believe that this Court made that analysis and went through that kind of a motion when they decided in Nunez that the case Nunez went to a lot of points, but can you point to some specific language in Nunez that made that analysis that would be striking that wasn't before the Court? Well, Your Honor, it just basically says that because the case is not a published one, it's only an unpublished decision from the board. That's the point. It's a published decision. So based upon your statement you just read from Nunez, that supports the idea that the board can do it, can. It doesn't limit the board from using a published case. Now, the board uses a case that somebody is substantiating or causing prostitution by renting a room to a prostitute. That's the published case. And then the board says, well, this case is close to that under that generic deference, so the board is using a published case, but it's just saying it's broadening the issue to make it one that can be used. Now, that's good and that's bad. I mean, I'm not saying that it's a good idea or a bad idea. What I'm saying is that I'm not sure we have a case that forbids the board from doing that. Well, Your Honor, if the board would like to make a rule that would make the Ninth Circuit binding, they could have published Rohit's decision finding that 647B is a crime of moral turpitude. So I don't believe there are any rules other than the Chevron rule and the Skidmore rule, Your Honor. I don't believe there is another third rule. But I understand from the practice of the Ninth Circuit Court of Appeals that how this has always been addressed. The board does not say that Lambert is in point. The board in its decision in Rohit does not mention several homosexual cases, published cases issued since the time of Lambert, which dates back all the way to 1965, Your Honor. The court does not mention 1972 and 1977 sodomy cases, which have since been overruled by 648. Is this a sodomy case? No, Your Honor. But this is a question of a crime of moral turpitude. So since the board has said that it's a crime of moral turpitude to rent a case to a prostitute. Yes. Okay. That's not prostitution. That's not solicitation of prostitution. Right. But it is something that's involved with prostitution. Right. Now, if they have to wait for every little detail to be the same, then they would argue, I'm sure, that you can't function that way. That's not the way of the law. That's not the way of reasoning. But they did take a published case involving prostitution. And the Attorney General will say, but that's enough. That we're using a public case and we're reasoning from that published case. But that doesn't mean, Your Honor, that this Court doesn't have jurisdiction to review it. And if I may point out, in Gonzales-Aquipan, Gonzales-Aquipan deals exclusively with 647B, subsection B of the California Penal Code. And in a two-sentence statement, they decide, well, we don't have to decide whether it's a crime of moral turpitude. And they don't cite to Lambert. They don't, in a published decision that Gonzales-Aquipan is, they don't say, well, probably we would or we wouldn't that way. They were free to decide it at that time. And they, for some reason, they chose not to. They do acknowledge that there is another issue relating to prostitution. Reasoning by analogy does not really involve a regulatory agency's expertise. The reason we give deference, Chevron deference, across the board is because of the expertise that is residing in the agency. But when it's a question of whether the analogies are good or bad analogies, which is something that we all learned back in law school how to deal with, there's no particular reason to give deference, is there? No, Your Honor. There isn't any particular reason to give deference. And I think the board makes mistakes. And those mistakes are made quite often, Your Honor. For example, in their decision, I don't believe that they really talk about their own requirement from the attorney general's decision in, oh, my goodness. I apologize. In Silva-Trevino, which supposedly defines crimes of moral turpitude and lays the issue of what a crime of moral turpitude is, that it's a crime that's based vile depraved, contrary to moral standards, that requires scienter. I don't believe that this court is free to give proper deference to that decision when the board doesn't really follow the standards set by the attorney general in a decision on the board level. So they might be entitled to more deference. And they might be the entity that really decides it. But I don't believe that they really did that in this case, Your Honor. Can I change the focus just for one minute? I want to be sure that we're in agreement on something. Do you agree that your client has waived any argument that his conviction for dissuading or attempting to dissuade a witness has been waived? Well, Your Honor, as I mentioned at the beginning, this court's remand, the first time around, was very narrow. And I believe that the board only addressed the issue of whether 647B, which is why we didn't argue it. So if the court deems it waived. If you didn't bring it up, it's waived, right? I would really oppose that. And I will take their time. Okay, all right. Very good. Very good. Ms. Cantor. May it please the court. Nancy Cantor on behalf of the attorney general. The only issue that's properly before the court today is whether Petitioner's October 1997 commission for solicitation of prostitution constitutes the CIMT. As Your Honor noted, Petitioner has waived any challenge to the board's determination that his 1998 conviction for attempting to dissuade a witness constitutes the CIMT by failing to raise that argument in his brief. Here the agency reasonably concluded that Petitioner's 647B conviction constitutes the CIMT. Both the board and the state of California have long held that crimes involving prostitution constitute a crime involving moral turpitude. Here the agency looked at its prior precedent, matter of W, in which it held that it is well established that a crime of practicing prostitution constitutes prostitution involves moral turpitude, as well as matter of Lambert, in which it held that the, as we discussed, letting out rooms, the practice of letting out rooms in furtherance of knowing that they're going to be used for prostitution is a crime involving moral turpitude. Your Honors have recently asked the question, so what deference is due to the agency's determination? I respectfully argue that the agency's determination, Chevron deference, is due to the agency's determination because of matter of W and matter of Lambert. In both cases, the, in both cases, the central, the central act was prostitution. Whether that was actual engaging in prostitution or in an act in furtherance of prostitution, like here, a crime, like here, a solicitation of prostitution offense, those acts which involve prostitution, sexual acts in exchange for money or other consideration, are acts which both the State of California and the Board find to involve moral turpitude. So your, your position is that even though the case may not be right on point, that like we do generally with case law, if there is an analogy to a published opinion, that is sufficient to be worthy of Chevron deference in this case? Absolutely, Your Honor. For, and another way in which this Court regularly analogizes this case law is when you look at acts which are, when you look at offenses which are CIMTs, you look at other cases, other similar analogous cases, which have or have not been determined to be crime involving moral turpitude. There's no question that's what, what we do, the Article III judges. Right. The question here is whether an administrative agency that's charged with carrying out a particular law and to which Chevron, Skidmore or our deference is, is warranted in some instances, whether it's entitled to Chevron deference when it has to analogize as opposed to a case that's on all fours. I don't really understand why, if I may, why it's the same as what we do. When a district court makes an analogy in an ordinary case, which is courts do all the time, have to do all the time, because as Judge Wallace pointed out, otherwise you'd have to sort of reinvent the law for every new case. The strength of the reasoning, whether it was a proper analogy or not, is subject to de novo review by the Court of Appeals. What you're asking here is to say that when the BIA uses analogy, when an agency uses an analogical reasoning, it should not be subject to de novo review. It should, that the, whether its analogizing was good or bad reasoning should be given extreme Chevron deference. I don't see that as being the same at all. Well, Your Honor, even if the Court disagrees that Chevron deference is not due in this case, even under Skidmore, I believe that the Board's decision is due a high level of deference. As this Court recognized in Marmolejo-Campos, under Skidmore deference, the measure of deference afforded to the agency varies depending on the thoroughness, evidence of its current consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements. Here, the Board's determination that Petitioner 647b, Commission, constitutes a CIMT is consistent with its earlier decisions on, earlier decisions concerning whether prostitution or acts relating to prostitution constitute CIMT. So in light of what you've just said in response to Judge Rakoff's question, are you now saying that the government's position is that we really are, to look at this with Skidmore deference, we're really not giving it Chevron deference, we're looking to see whether we agree with the reasoning of the Court, whether the analogy was apt, whether it's consistently applied that. Is that your position now? No, Your Honor. My position is that Chevron deference should be accorded to the agency. However, in the event the Court determines that Chevron deference is not due, and I'm not aware of a case, as you asked my colleague earlier, I'm not aware of a case in which any court has looked to what deference is due to the agency's decision, where it analogizes, where it analogizes versus relies on an earlier published decision. But I do believe because the Board has held, has consistently held that prostitution and acts relating to prostitution constitutes crimes involving more turpitude, that the agency's decision here is due deference, Chevron deference, based on its earlier precedent. But as Judge Rakoff pointed out, I mean, Chevron deference is, that's pretty, that's a very, the Supreme Court's made it really clear that you've got this specialized agency, it has previously ruled, when it relies on those rulings, we basically, unless we just think they're just absolutely off the wall, we have to follow it. Here you've got an analogous situation. It deals with CIMTs, it deals with prostitution, but it isn't the act of prostitution. It's all these, the penumbra of things that occur around it. Isn't what Judge Rakoff mentioned the more appropriate standard here, where we look, in effect, affords Skidmore deference, where we look to see whether the analogy was an apt one? We may totally agree with you about that. It's just the level of deference that's applied. Well, Your Honor, my position here today is that Chevron deference should be due. If you want to talk about the penumbras or the umbrella of prostitution offenses, there's obviously actually engaging in prostitution, and then there's crimes involving prostitution. Here, the offense of 647B is soliciting prostitution, whereas in matter of Lambert, it was letting, it was a house owner, rooming board owner, letting out rooms, knowing that they're going to be used in prostitution. Frankly, I think that an individual who engages in solicitation of prostitution is much closer to the offense of actual committing prostitution than, say, a shop owner who lends out a room. So I think that the Board's decision here, even though it is evidently never held that soliciting prostitution is a CIMT, it falls, it falls much closer to an actual crime involving prostitution than the case of Lambert. So that's your position. You're sticking with it. Debron Dufferin should apply. Yes, Your Honor. In any event, unless the Court has any other questions regarding Petitioner's 647B conviction, I respectfully submit that Petitioner has waived any challenge to his 136.1 conviction as to whether or not that's a CIMT. And because the agency's determination that his 647B conviction is a CIMT is reasonable, the Board should deny his petition for review. Thank you. Your Honor, I just wanted to stress that this is not the act of prostitution that we're talking about. This is a solicitation only. The proof that was proffered by the Department of Homeland Security to assert that Mr. Roquet was actually caught soliciting prostitution on the ticket says itself that he was, he spoke to an undercover officer and then followed her. He followed her towards a room. There was no prostitution that took place in this, in this, in this event. But why is that any less morally turpitude? Pardon me? Why is it not still a morally turpitude crime? Your Honor, because it doesn't have the required, the required mens rea of, of set out in Silva Trevino of, of, of scienter, Your Honor. That scienter is required. The act cannot just be based, violent, depraved and contrary to moral standards. It has to have a malicious intent, a scienter requirement as set out by the Board itself. Do you have that requirement in, in the categorical analysis or are you talking about if we get to the modified categorical analysis, we have to look at that? I, that, that is correct, Your Honor. I believe this is categorically not a crime of moral turpitude. I've, I've missed your point and I'm sure it was a good one. You say that there was no scienter here. Are you saying that because she wasn't really a prostitute? She was a police officer. Well, there, there was no malicious, there was no malicious intent here. The, the intent was to engage in, in, in sex. Okay. So it didn't make any difference that it was a police officer rather than a prostitute. And the scienter was to, to solicit prostitution, to pay for sex. And for some reason, you, you skipped from there that there is no scienter. Didn't he still, up until the time he found she was a cop, didn't he, wasn't he trying to get sex for money? Yes, Your Honor, he was, and that is a criminal act. And that's scienter, yeah. That, that is a criminal act, but I don't believe that in the, in the jurisdiction of the Ninth Circuit, with all the precedent decisions set by this Court, I don't think that rises to that higher level. Being, running, running a, a house of ill repute, renting the rooms to somebody who uses them for ill, ill-reputable activities, being, pimping on the street, those are all, those are all, those might possibly rise to the level of a crime of moral turpitude. Those would be crimes of moral turpitude. You just, you just moved from scienter to moral turpitude, and I understand your argument on moral turpitude. I didn't understand the one that somehow he didn't have scienter here. Well, Your Honor, scienter is the part of the crime of moral turpitude definition set by the Attorney General in Silva-Trevino. The Attorney General determined that the definition of a crime of moral turpitude is conduct that is base, vile, depraved, that also has the requirement of scienter in it. Intent. That is the intent, the intent of scienter in it. Okay. So while I believe that many, many will agree that it's base, vile, and depraved to want to engage in prostitution, but there was no, it didn't take, there was no meeting of the scienter requirement in this case, and when one commits a crime under 647B. I won't push you any further, you're just repeating yourself. Okay. Thank you. Thank you both for your argument. The case of Rohit v. Holder is submitted.
judges: Rakoff, Wallace, Smith